

**ORDERED in the Southern District of Florida on March 2, 2021.**

Mindy A. Mora, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                                     Case No. 19-20400

Villas of Windmill Point II Property              Chapter 11
Owners Association, Inc.

      Debtor.

_____/

**MEMORANDUM OPINION AND ORDER**
**DENYING INDEMNITY MOTION (ECF NO. 321)**

The Court has before it a motion (ECF No. 321) filed by Thomas Lesko ("Lesko"), McDonald Storey ("Storey"), and Steven Goldfarb ("Goldfarb") seeking advancement of legal fees and other litigation costs (the "Indemnity Motion"). Lesko, Storey, and Goldfarb (collectively, "Movants") are each defendants in three separate but related adversary proceedings (the "Adversary Proceedings")[1] commenced by the

---

[1] The Adversary Proceedings are:

| | | |
|---|---|---|
| *Osborne v. Lesko* | Adv. Proc. No. 19-01822 | ("Lesko Proceeding") |
| *Osborne v. Goldfarb* | Adv. Proc. No. 19-01874 | ("Goldfarb Proceeding") |

chapter 11 trustee, Les Osborne ("Trustee"). Movants seek indemnification for expenses previously incurred (and continuing to accrue) in their defense of the Adversary Proceedings and prosecution of claims in this Bankruptcy Case.

## A. Indemnity Motion and Trustee's Response

### 1. Indemnity Motion

Movants each assert a right to indemnification for any litigation relating to or arising from their duties as directors and officers of Villas of Windmill Point II Property Owners Association, Inc. ("Debtor"), which includes their defense of the Adversary Proceedings. Lesko also seeks an immediate advancement of funds to cover his personal legal fees as they are incurred.

In support of the Indemnity Motion, Movants submit three documents (the "POA Documents") for the Court's consideration:

- A copy of the By-Laws of the debtor, executed in September 1982, and recorded on August 8, 1998 at OR Book 1167, Pages 1105-1121 (the "By-Laws")[2]
- A Resolution of the Board of Directors for Villas of Windmill Point Property Owners Association, Inc., dated October 27, 2010 (the "2010 Resolution")
- A document titled "3-1-19 Resolution of the Board of Directors and Officers of the Villas of Windmill Point II Property Owners' Association, Inc. and Agreement with Tom Lesko, Individually and T/A Lesko

---

*Osborne v. Storey*      Adv. Proc. No. 19-01877      ("Storey Proceeding")

[2] The document date is incomplete and refers to September 1982 without a specific date. *See* ECF No. 332-2, p. 14. According to the official records of St. Lucie County, Florida, the By-Laws were recorded on August 24, 1998, in OR Book 1167, at Pages 1105-21, along with a certification executed on August 7, 1998 by the then-serving board of directors of Debtor stating that these By-Laws were a "photostated" [sic] copy of the original By-Laws of Debtor. The certification was signed by Lesko as president and Margaret Gauthier as secretary of Debtor and was filed in the official records of St. Lucie County, Florida at OR Book 1167, at Page 1103. The Court takes judicial notice of the recordation and certification. F.R.E. 201.

Consulting for Separation, Severance, and Termination of Paid Services" (the "2019 Resolution")

Movants share counsel, who has filed identical documents in each related Adversary Proceeding. Because the Lesko Proceeding has become the vehicle in which all legal defenses are presented on behalf of all Movants,[3] indemnification and advancement for Lesko, if granted, would be tantamount to indemnification and advancement for all Movants.

2. Trustee's Response

Trustee filed a response (ECF No. 330) (the "Response") articulating five substantive bases for Trustee's opposition to the Indemnity Motion. Those bases include:

- Movants' failure to timely file a proof of claim for funds arising from the purported entitlement to indemnification
- The first-party nature of the litigation claims asserted by Debtor against Movants
- The unenforceability of the 2010 Resolution
- The absence of a contractual basis for advancement in the By-Laws and the 2019 Resolution
- The totality of the facts and circumstances surrounding the claims, including prior findings by the County Court in and for St. Lucie County (the "State Court") of illegal and improper conduct by Defendant Lesko.

Trustee argues that these five substantive bases collectively weigh against any permissive entitlement to indemnification.

Trustee also submits two procedural arguments as a basis for denial of the Indemnity Motion:

---

[3] Movants' counsel has filed notices in the Goldfarb Proceeding and the Storey Proceeding incorporating by reference the defenses and arguments raised in the Lesko Proceeding.

- Florida's current statute governing advancement, Fla. Stat. § 607.0853,[4] did not become effective until Jan 1, 2020 and therefore does not apply to this Bankruptcy Case or its related Adversary Proceedings, all of which were commenced in 2019.
- Florida law does not entitle Movants to a summary proceeding (as that term is used in Delaware indemnity case law) on the issue of advancement.

Finally, Trustee asks the Court to impose sanctions for Movants' request for advancement, which Trustee characterizes as frivolous.

**B. The POA Documents**

To determine whether Movants are entitled to indemnification, the court must carefully inspect each of the POA Documents. The Court is guided in this analysis by general principles of contract interpretation. *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV,* 906 F.3d 1329, 1336 (11th Cir. 2018).

1. <u>By-Laws</u>

The By-Laws appear to be a fairly standard  document based upon a generic form. The provisions are generally in line with typical bylaws.[5] Movants have directed the Court to Article XI, Section 9, entitled "Indemnification of Officers and Directors" (the "<u>Indemnification Provision</u>"). This section provides as follows:

---

[4] Unless otherwise indicated, all references in this Memorandum Opinion are to Florida Statures as in effect in 2020. As of the date of this Memorandum Opinion, the Florida Legislature has not promulgated statutes for the calendar year 2021. As a result, the 2020 Statutes remain in effect for most purposes in this Bankruptcy Case whether the Court considers the date of filing the Indemnity Motion, date of commencement of the Adversary Proceedings, or date of issuance of this Memorandum Opinion. Where a statute from a prior year is applicable, the Court has noted the distinction and the basis for application of a statutory provision that has been amended.

[5] The By-Laws date back to 1982. Because the business world and grammatical usage have both evolved since that date, the Court construes all masculine pronouns references for director and officers to include any director or officer, regardless of gender.

> Every Director and every officer of the Association will be indemnified by the Association against all expenses and liabilities, including legal fees reasonably incurred by or imposed upon him in connection with any proceeding or any settlement of any proceeding to which he may be a party or in which he may become involved by reason of his being or having been a Director or officer of the Association, whether or not he is a Director or officer at the time such expenses are incurred, except when the Director or officer is adjudged guilty of willful misfeasance or malfeasance in the performance of his duties. <u>Provided that</u> in the event of a settlement, indemnification will apply only in the event that the Board of Directors approves such settlement and reimbursement as being in the best interest of the Association. The foregoing right of indemnification will be in addition to and not exclusive of all other rights to which such Director or officer may be entitled.[6]

When analyzed in the context of the entire By-Laws, the Indemnification Provision is benign. The language comports with standard provisions and is consistent with the tenor and intent of other provisions. For instance, Article VI, Section 1 states that the Debtor was organized to "promote the health, safety and welfare of [its] residents".[7] Subsection q. of Section 1 also provides authority to the Board of Directors to take actions "insofar as permitted by law" that "will promote the common benefit and enjoyment" of Debtor's residents.[8]

When viewed in context with the entire By-Laws, the Indemnification Provision appears facially valid. This determination, however, does not provide a complete answer to the question of whether Movants may presently seek indemnification for as-yet unresolved litigation involving allegations of malfeasance. The Court will therefore turn to the remaining two POA Documents.

---

[6] ECF No. 332-2, p. 11 (By-Laws, Art. XI, § 9) (emphasis in original).

[7] ECF No. 332-2, p. 4 (By-Laws, Art. VI, § 1(q)).

[8] *Id.* at p. 5.

2.  <u>2010 Resolution</u>

The 2010 Resolution follows none of the drafting conventions typical of a corporate resolution. In stark contrast to the By-Laws, the 2010 Resolution includes an elaborate set of recitals explaining the history of Lesko's involvement with the Debtor and past litigation between the parties. The eighth paragraph of the 2010 Resolution sets forth language intended to indemnify Lesko from any potential claims arising in connection with his relationship with the Debtor.

This paragraph provides as follows:

> **WHEREAS, IT IS HEREBY RESOLVED**, that Tom Lesko, individually, and as a consultant and as a volunteer Director and Officer and Registered Agent shall be forever held harmless and released of any claims or charges of any kind and indemnified and defended by VWP2,[9] whether claims be brought of malfeasance, neglect, errors or omissions, and unanimously support [sic][10] his suggestions and actions as the best possible "business judgment" during such a historic financial crises [sic], and will support his financial costs and value to the POA, with his best of intentions clearly shown by the fact that the POA will benefit financially by two[-]thirds of gained equity from his consultations and actions, therefore [. . .][11]

The 2010 Resolution appears to have been drafted by a non-lawyer. From the text of the document itself, the overall posture of this Bankruptcy Case and its related adversary proceedings, and prior representations to the Court by the parties, the Court surmises that Lesko was likely the primary author of the 2010 Resolution.

---

[9] The term "VWP2" is undefined in the 2010 Resolution but presumably refers to Debtor. In the opening paragraph, however, Debtor is defined as "POA". This inconsistency in terminology further reinforces the Court's assessment that the 2010 Resolution likely was not drafted by qualified counsel.

[10] The subject of this clause is omitted, which makes the provision ambiguous. The Court presumes that Debtor is the intended actor.

[11] ECF No. 332-3, p. 4 (2010 Resolution, paragraph 8).

Four persons signed the 2010 Resolution, two of whom are defendants in Adversary Proceedings presently before this Court. The four signatories are: Lesko, Storey, David Rudzik, and Justin Zaron. The 2010 Resolution states that the signatories constituted a "majority" of the Directors and Officers of the Debtor but fails to (i) state what number would be required for a quorum or (ii) eliminate Lesko's vote from whatever the tally would have been required to constitute a majority. Because Lesko was clearly an interested party, the inclusion of his vote potentially rendered the 2010 Resolution void. Fla. Stat. § 617.0832.

    3. <u>2019 Resolution</u>

The 2019 Resolution likewise demonstrates little regard for typical corporate formalities. In much the same manner as the 2010 Resolution, the 2019 Resolution devotes four pages to an extended narrative of Lesko's personal history. The final paragraph of this document provides as follows:

> VWP2 hereby agrees to forever release and hold harmless Tom Lesko individually, and as business consultant and as a Director, Officer and President from any claims or charges of any kind from past, present or future activities, and to indemnify him if any such allegation of errors, omissions, failures, neglect, malfeasance or complaint of any kind be made against him, or for unexpected expenses or unanticipated events and unforeseen liabilities to deal with hereafter, as this has been a totally unique situation that he will be unable to see through to the end, and VWP2 unanimously believes that he has recommended and pursued a best business judgment rule that brought the best results possible in a chaotic, historic decade-long foreclosure crises of over 60 out of 89 units, and financial disaster and unique internal problems that affected VWP2 more than any other Association possibly in the country, which decisions, [sic] still brought VWP2 more income and equity than any

7

other Association as well, and much appreciated [sic] by VWP2.[12]

The 2019 Resolution is signed by four persons, each of whom is or has been a defendant in an adversary proceeding before this Court. The four signatories are: Lesko, Storey, Goldfarb, and Richard Mottley.[13]

The 2019 Resolution contains an additional unusual signature line immediately below the signatures providing that Lesko "attest[ed], accepted and agreed" in his capacity as "Consultant" of "Lesko Consulting". As with the 2010 Resolution, the inclusion of votes from Lesko and other parties who were likely self-interested calls into question the validity of the 2019 Resolution. Fla. Stat. § 617.0832.

## ANALYSIS

### A. Failure to Timely File Proof of Claim

Trustee's first argument, that Movants' failure to timely file a proof of claim results in a forfeiture of any claim for indemnity, does not carry the day because this is a chapter 11 case in which a plan of reorganization has not yet been confirmed.[14] Although the proof of claim deadline lapsed on December 11, 2019, Movants could seek the allowance of a late-filed claim or assert an administrative expense claim for allegedly indemnified expenses arising post-petition. Because any such argument

---

[12] ECF No. 332-4, p. 5 (2019 Resolution, final paragraph). The drafting ambiguities and errors in the quoted portion are typical for the document.

[13] Richard Mottley entered into a settlement resolving Adversary Proceeding No. 19-01876, which this Court approved (ECF No. 257).

[14] Trustee, on behalf of Debtor, filed a Plan of Reorganization (ECF No. 336) and a Disclosure Statement (ECF No. 337) on December 15, 2020, neither of which have been approved as of the date of this Opinion.

would entail fact-based discovery regarding issues not presently before the Court, the Court will assume arguendo that Movants' failure to timely file a proof of claim or a motion for allowance of an administrative expense claim is merely a procedural rather than substantive obstacle. With that in mind, the Court will turn to substantive issues.

## B. First-Party Indemnification

Trustee's next argument focuses upon the first-party nature of the claims between Trustee, on behalf of Debtor, and Movants. Trustee asserts that Debtor should not be required to indemnify Movants for direct claims between the parties, as opposed to claims interposed against Movants by third parties. Although a significant body of case law supports Trustee's argument, Florida courts have permitted indemnification for first-party claims in a similar factual context. *Wendt v. La Costa Beach Resort Condo. Ass'n., Inc.*, 64 So. 3d 1228, 1230-31 (Fla. 2011); *MVW Mgmt., LLC v. Regalia Beach Developers LLC,* 230 So. 3d 108, 112-13 (Fla. 3d DCA 2017) (citing *Wendt*).

## C. Contractual Indemnification

The next question is the most crucial one: Are Movants entitled to indemnification under the POA Documents? This issue presents a mixed question of fact and law, as is typical for contract interpretation. *Reynolds v. McInnes*, 338 F.3d 1201, 1211 (11th Cir. 2003) (citing *Int'l Ins. Co v. Johns*, 874 F.2d 1447, 1453 (11th Cir. 1989)). For this analysis, the Court must consider facts presently in the record

as well as basic principles of contract interpretation. *Id.*

    1.  <u>Do the By-Laws Establish an Entitlement to Indemnification?</u>

The By-Laws provide the wellspring from which any right to indemnification flows. The Indemnification Provision permits indemnification, but only if the director or officer has not committed "willful misfeasance or malfeasance" in the performance of his [or her] duties. The question of whether Movants have met this standard cannot be determined with finality at this time. The facts presently in the record do not support an entitlement, and additional pertinent facts will undoubtedly be presented as part of the resolution of the Adversary Proceedings.

In a prepetition receivership action involving Debtor (the "<u>State Court Case</u>"), the State Court found that Debtor's prior board of directors acted in a manner indicative of willful misfeasance or malfeasance.[15] In that same action, the State Court sanctioned Lesko for his failure to obey multiple court orders regarding discovery.[16] The absence of facts in the State Court Case due to discovery violations, when combined with the present procedural posture of this Bankruptcy Case and the Adversary Proceedings, makes any determination regarding indemnification at this

---

[15] Specifically, the State Court found that, by virtue of entry of a judicial default, Debtor admitted that the board of directors "continues to conduct the affairs of the HOA pursuant to its nefarious business model that only promotes fraud, self-dealing and waste of the HOA's assets and the assets of its members." Adv. Proc. No. 19-01822, ECF No. 44, Exhibit J, at ¶ 4 *(Order on Motion to Appoint Receiver,* (the "<u>Receivership Order</u>"),  entered Aug. 2, 2019 in the State Court Case). According to public records maintained by the Florida Department of State, both Lesko and Mottley were directors of Debtor when the State Court entered the Receivership Order. *See* 2019 Florida Not for Profit Corporate Amended Annual Report, dated August 2, 2019, available at https://dos.myflorida.com/sunbiz; s*ee also* Fed. R. Evid. 201.

[16] Adv. Proc. No. 19-01822, ECF No. 44, Exhibit G (*Order Striking Pleadings and Order Entering a Judicial Default for Defendant's Willful Failure to Comply With Multiple Consecutive Orders* (the "<u>Default Order</u>"), entered Dec. 21, 2018 in the State Court Case).

juncture extraordinarily difficult. Presently, the Court simply does not have enough information in the record to demonstrate that Movants have met the qualifications set forth in the Indemnification Provision. And, to the extent that facts exist in the record regarding entitlement under other portions of the (allegedly amended) By-Laws, those facts do not support entitlement under the Indemnification Provision.

2. <u>Do the Resolutions Provide an Entitlement to Indemnification</u>?

The two Resolutions differ vastly from the By-Laws in style and content. Setting aside procedural issues, including the potential that the Resolutions were not approved by a majority of disinterested officers and directors (a factual point for which the Court lacks sufficient evidence at this time), the Resolutions are replete with self-serving language wholly atypical of a corporate document.

The 2010 and 2019 Resolutions attempt to remove any possible restriction upon Lesko's ability to seek indemnification for litigation relating to his relationship with Debtor. From the record, it seems likely that the two Resolutions are, in essence, a legal fiction. The self-serving language sets the tone for the Court's interpretation of each Resolution. It is transparent to the Court that both Resolutions attempt to provide a "Get out of jail free" card to Lesko for any actions that he undertook during the course of his relationship with Debtor.

Neither Resolution addresses Storey, Goldfarb, or any other officer or director. The absence of uniformity in treatment of directors and officers is troubling and further undermines the validity of the Resolutions.

11

The Court cannot discern any true corporate purpose to the Resolutions. Although a universe of facts *may* exist in which the Resolutions are what they purport to be, meaning true and accurate reflections of the will of the Board of Directors, this appears unlikely. And, more importantly, language in the Resolutions granting Lesko carte blanche to act as he saw fit, without regard to the impact of those actions upon Debtors' members,[17] expressly contradicts Article VI, Section I of the By-Laws, which requires directors and officers to perform their duties for the common benefit of all residents of the property that Debtor was formed to manage.

From a purely textual standpoint, the Resolutions expand the Indemnification Provision to include actions that are not "permitted by law" and do not "promote the common benefit and enjoyment" of Debtor's residents. The Resolutions also ignore the Indemnification Provision's requirement that the Board of Directors must approve a request for indemnification subsequent to a settlement only after explicitly determining that the settlement and reimbursement are in the best interest of Debtor. All of these conflicting provisions are problematic.

Movants have failed to provide any evidence clearly demonstrating that the Resolutions were approved as amendments to the By-Laws, which would have only occurred after an affirmative vote of two-thirds of the members of Debtor obtained at

---

[17] Article III, Sec. 1 of the By-Laws provides that every record owner of a lot within the "Properties" is a member of Debtor. (Article I, Sec. 2 of the By-Laws defines "Properties" by reference to a legal description that includes the property located in the Plat entitled Villas of Windmill Point II, Third Replat in Port St. Lucie, Section Forty Two, recorded in Plat Book 28 at page 28-28C of the Public Records of St. Lucie County.)

a regular or special meeting of the members.[18] Trustee states in the Response that the members were never presented with the Resolutions for approval and, upon learning of the 2010 Resolution, expressly voted to nullify it. As a result, without providing proof of the requisite vote of Debtor's members, Movants have failed to demonstrate that the Resolutions amended the By-Laws.

Without additional facts in the record, the informally-authored releases in the Resolutions appear to be textbook examples of self-dealing in contravention of governing Florida law. Fla. Stat. § 617.0832. At first blush, the lack of formality and, more importantly, lack of discernible benefit to Debtor make the validity of the Resolutions highly suspect. As a result, the Court cannot conclude at this time that the Resolutions provide a basis for indemnification for any Movant.

**D. Advancement**

The Indemnification Provision is noticeably silent regarding the potential advancement of legal fees. In evaluating a request for advancement by an officer, partner, or director, courts typically look first to the entity's governing documents. *See generally In re Ransome Grp. Inv'rs I, LLLP*, 424 B.R. 547, 553-54 (Bankr. M.D. Fla. 2009) ("[T]he only issue is whether the parties had agreed to grant advancement rights to the partner ...."). In the absence of clear support for their request in the By-

---

[18] This statement presumes that the applicable amendment did not otherwise conflict with the Articles of Incorporation ("Articles") and Declaration of Covenants and Restrictions ("Declaration"). *See* ECF No. 332-2, page 14 (By-Laws, Art. XVII, § 1). It is possible that the Resolutions were prohibited by the Articles or the Declaration and are thus entirely void. Movants' failure to provide copies of the Articles (as potentially amended) and the Declaration for analysis is yet another reason why the Court is unable to conclude with finality that the Resolutions are valid.

Laws, Movants direct the Court to Florida Statute § 607.0854 (2019), which provides a statutory basis for advancement.

Trustee counters that the savings clause embodied in Florida Statute § 607.1907 (2019) prohibits statutory advancement. Trustee is partially correct. Florida Statute § 607.1907 (2019) provides that the 2019 revisions to Chapter 607, including Florida Statute § 607.0854, do not apply retroactively to actions pending as of January 1, 2020.

Florida Statute § 607.0850 (2018) potentially provides a statutory basis[19] for court-approved advancement, but the Court cannot grant that approval under the present circumstances for four interrelated reasons.

First, Movants have failed to provide the Court with all documents necessary for the Court's evaluation of whether Debtor obligated itself prior to a final adjudication on the merits of the particular claims alleged.[20] This analysis is a prerequisite to any court-authorized advancement.

Second, it is patently obvious that the Resolutions conferred a benefit upon Lesko (and potentially all Movants). Whether or not this benefit was "improper" is a mixed question of fact and law that cannot be determined with finality at this time.[21]

---

[19] Debtor is a not-for-profit corporation. The first source of governing statutory authority for not-for-profit corporations is Florida Statutes Chapter 617, which in turn refers to and incorporates multiple provisions of Florida Statutes Chapter 607. *See* Fla. Stat. § 617.0831. Florida Statutes § 607.0850 (2018) pre-dates the (inapplicable) 2019 amendments to the Florida Statutes.

[20] Specifically, Movants have not provided (i) Debtor's articles of incorporation, (ii) complete records of any director or member vote regarding advancement, (iii) clarification as the total number of directors eligible to vote and the disinterestedness of any voting director, or (iv) recorded covenants and restrictions.

[21] The alleged impropriety of Movants' actions in conferring mortgages upon themselves is a lynchpin issue within the Adversary Proceedings. The fact-finding relevant to those allegations will

The Court simply lacks sufficient evidence to determine the propriety of Movants' (including Lesko's) actions, which must be determined in order to order statutory advancement.

Third, Movants have described themselves as destitute and unable to pay the fees and costs of counsel. Because Movants would be obligated to repay any advancement if they are unable to successfully defend against Trustee's pending allegations of fraud and self-dealing, Movants' stated inability to finance litigation undermines their request. *Ransome*, 424 B.R. at 553-54.

Fourth, Florida Statute § 607.0850(9) (2018) specifically directs the Court to consider all relevant circumstances in evaluating a potential entitlement to indemnification or advancement of legal costs. Fla. Stat.§ 607.0850(9) (2018); *Turkey Creek Master Owner's Ass'n, Inc. v. Hope*, 766 So. 2d. 1245 (Fla. 2d DCA 2000). A cursory review of the claims set forth in each of the Adversary Proceedings illustrates the importance of clear and definite evidence of proper compliance with all corporate formalities prior to burdening Debtor with increased legal fees. That evidence is lacking. Moreover, the nature of the claims alleged, the existence of the Receivership Order, entry of the Default Order, and Movants' admitted inability to repay any advancement that ultimately must be refunded to Debtor, are all factors that weigh heavily against approval of Movants' request for advancement. *Id*.

Accordingly, Movants' request for statutory advancement must be denied.

---

undoubtedly overlap heavily with the fact-finding required for a final determination regarding indemnification and, by extension, advancement. That being said, the Court is mindful of the potential *res judicata* impact of the Receivership Order.

### E. Summary Proceeding

Trustee's argument that Movants are not entitled to a summary proceeding on the issue of advancement is well-taken. Although this procedure has been permitted under Delaware law, it is less certain that a similar result is appropriate under Florida law. *C.f. Ransome*, 424 B.R. at 553-54. Absent clear language in the By-Laws specifically providing for advancement, the Court easily concludes that the totality of the circumstances strongly weighs against conducting a summary proceeding. The reasons that the Court is unwilling to conduct a summary proceeding are the same as those previously expressed in Section D (above).

First, the Indemnity Motion asserts that Movants are unable to pay counsel for his services. The Court presumes that this pressure likely prompted the filing of the Indemnity Motion and is sympathetic. This financial reality, however, is yet another reason why advancement is inappropriate. 424 B.R. at 553-54 (ability of a litigant to repay advancement is a critical factor in determining entitlement).

Second, the facts presently in the record of this Bankruptcy Case and its related Adversary Proceedings collectively indicate that an enforceable entitlement to indemnification for Movants is very questionable. The record contains evidence of self-dealing and court-ordered sanctions for failure to comply with discovery orders. Balanced against that, the Court must consider the interests of all parties, including the many other residents, members, and creditors of Debtor. Having considered all pertinent facts, the Court determines that a summary proceeding on the issues of

advancement and/or indemnity would serve only to delay the Adversary Proceedings and further saddle Debtor's estate with unnecessary legal fees.

F. **Sanctions**

Although Movants' request for indemnification and advancement was not well-founded, the Court declines to award sanctions at this time.

Section 1927 of title 28 "requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. America Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir.2002). Although the Court strongly questions Movants' decision to file the Indemnity Motion under all facts presently in the record, the presence of the Indemnification Provision in the By-Laws is the very slender reed upon which the Court rests its decision not to award sanctions.

Because the Indemnification Provision permits indemnification under certain limited circumstances, the Court will assume that the Indemnity Motion was not filed to vexatiously multiply and delay this Bankruptcy Case and the Adversary Proceedings. That being said, Movants are cautioned to tread lightly in future motions and urged to move swiftly throughout the balance of litigation between the parties.

For the foregoing reasons, the Indemnity Motion is **DENIED**.

###

Copy to:

Gary A. Goldstein, Esq.

17

Attorney Goldstein is directed to serve this Opinion and Order upon all interested parties and file a conforming certificate of service.